**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA HENDERSON, | ) | CASE NO. 1:18-CV-0189 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jessica Henderson (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

## I. Procedural History

On November 18, 2014, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of January 1, 2014. (Transcript ("Tr.") 182-191). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 128-143). Plaintiff participated in the hearing on February 8, 2017, was represented by counsel, and testified. (Tr. 35-70). A vocational expert ("VE") also participated and testified. *Id*. On May 2, 2017, the ALJ found Plaintiff not disabled. (Tr. 30). On December 20, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On January 25, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 12).

Plaintiff asserts the following assignments of error: (1) the ALJ violated the treating physician rule, and (2) the residual functional capacity ("RFC") determination was not supported by substantial evidence. (R. 11, PageID# 756).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1.  Treatment Records

On July 7, 2009, prior to the October 28, 2014 alleged onset date, an MRI showed compensatory lumbar scoliosis and mild degenerative changes. (Tr. 377).

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. As Plaintiff's assignments of error revolve around the weight ascribed to two treating source opinions concerning her physical RFC, the recitation focuses primarily on these opinions.

On January 28, 2013, an MRI revealed a "small meniscal tear." (Tr. 354).

On February 17, 2015, Abdul-Ghani M. Orra, D.O., noted Plaintiff reported back pain due to scoliosis, but her back was negative on examination. (Tr. 647-648). Plaintiff reported anxiety to the point of panic attacks when she flies, and reported an upcoming trip to Las Vegas. *Id*. at 648.

On April 13, 2015, Dr. Orra noted on examination that Plaintiff was negative for neck, muscle skeletal, back and extremities issues, but did diagnose unspecified anxiety, insomnia, generalized hyperhidrosis at night, and restless leg syndrome. (Tr. 641-643).

On July 22, 2015, Plaintiff was seen by Samuel Rosenberg, M.D., upon referral from Dr. Orra. (Tr. 524). Plaintiff reported back and neck pain, but no arm pain, weakness, or numbness. (Tr. 525). She had prior scoliosis surgery on two occasions. *Id*. Her gait was antalgic and her straight leg raise test was positive. (Tr. 527). She was diagnosed with lumbar and thoracic pain, lumbar radicular pain, cervical radicular pain and radiculopathy at C4/5, status post scoliosis surgery, and depression. (Tr. 528). An x-ray of the thoracic spine revealed posterior fusion from T4 to T11 with Harrington rods, and dextroscoliosis of the spine was identified. (Tr. 514-515).

On July 29, 2015, Plaintiff reported neck pain and muscle spasms to Dr. Orra, who noted negative symptoms on examination of Plaintiff's back, extremities, and muscle skeletal system, but neurologically she was positive for symptoms of cervical neuritis. (Tr. 618-619). He diagnosed cervicalgia and brachial neuritis or radiculitis. (Tr. 619).

Between August 3, 2015 and November 6, 2015, Plaintiff attended physical therapy at the referral of Dr. Rosenberg. (Tr. 490, 496, 503, 506, 510, 519).

On September 9, 2015, Plaintiff was seen as a new patient by Jonathan Belding, M.D. (Tr. 500). She had a "medical history significant for scoliosis," and surgery was performed in 1985 at

3

Rainbow Babies hospital. *Id.* Plaintiff reported recurrent back and neck pain since she had some instrumentation removed. *Id.* Plaintiff reported her arm pain was "a little bit worse," consistent pain in the posterior neck "which she has always had," but no issues with dexterity or gait imbalance. *Id.* Plaintiff reported never having tried any injections, and indicated physical therapy had not been helping. *Id.* She thought her prescription for Gabapentin might "be helping just a little bit." *Id.* On physical examination, Dr. Belding observed "[h]er neck exam shows significant tenderness to palpation over the midline[,] … full range of motion though with no significant crepitus[,] … [h]er upper extremity exam shows full strength, 5/5 in all distributions and dermatomes…. She has negative shoulder abduction sign on the left side. Her back exam shows a well-healed incision. She does have tenderness over the PSIS as well as the midline[,] … [s]he has full strength in bilateral lower extremities, 5/5." (Tr. 501). He noted that hardware from Plaintiff's scoliosis surgery appears intact without significant change, but that x-rays showed some significant degenerative narrowing, but only at one level. *Id.*

On October 10, 2015, an electrodiagnostic evaluation of the upper and lower extremities revealed early stage carpal tunnel syndrome on the right, cervical radiculopathy on the right, peroneal neuropathy bilaterally, and lower peripheral neuropathy bilaterally. (Tr. 596).

On October 16, 2015, an MRI revealed "[m]oderate cervical spondylosis with varying sites of foraminal impingement … at C5- 6 and more to the left at C6 - 7. No cord compression or intramedullary lesion. Partially visualized post surgical changes in the thoracic spine." (Tr. 539).

On November 6, 2015, Plaintiff was seen by Dr. Belding for continued complaints of pain in the left arm and hands. (Tr. 494). Her physical examination remained unchanged from her previous visit. *Id.* Dr. Belding diagnosed cervical radiculopathy and stenosis, recommending a two level diskectomy and fusion. (Tr. 494-495).

4

On December 10, 2015, Dr. Belding performed the anterior cervical diskectomy surgery and fusion and she was given a soft collar to wear until her follow up in two weeks. (Tr. 472-476).

On March 7, 2016, Dr. Orra noted spasm of the lower back and chronic low back pain (exacerbated by injury), and scoliosis on examination. (Tr. 580-582).

On May 25, 2016, Plaintiff complained of back pain to Dr. Orra, who again noted positive muscle spasm of the back, chronic low back pain, and scoliosis on examination. (Tr. 572-575).

On July 13, 2016, Plaintiff was seen by Dr. Belding, who noted Plaintiff was doing "really well," and that she was "very pleased," because her arm pain was all gone. (Tr. 681). He also noted that she had no neck pain. *Id*. Nevertheless, she indicated that she still had a "lot of back pain," stemming from scoliosis surgery performed when she was a child. *Id*. On physical examination, Plaintiff had full range of motion of her neck, full strength in her upper extremities and lower extremities, and she was neurovascularly intact. *Id*.

On January 5, 2017, Plaintiff returned to Dr. Belding. (Tr. 692-693). Eighteen months after her surgery, Plaintiff reported "very occasional" neck pain, but no arm or hand pain. *Id*. She stated her most significant issue was low back pain from her a remote surgery that she felt never improved. (Tr. 692). He advised a follow-up visit in two years. (Tr. 693).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On February 28, 2015, State Agency physician Leigh Thomas, M.D., completed a physical RFC assessment. (Tr. 82-84). Dr. Thomas opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand/walk for six hours, and sit for six hours in an eight-hour workday. (Tr. 82). He opined that Plaintiff could occasionally perform all postural activities, except that she could never climb ladders/ropes/scaffolds. (Tr. 83). Dr. Thomas sated

Plaintiff had no manipulative, visual, communicative, or environmental limitations, except that Plaintiff needed to avoid all exposure to hazards. (Tr. 83-84).

On July 12, 2015, State Agency physician Lynne Torello, M.D., reviewed the medical evidence of record an offered the same RFC as Dr. Thomas. (Tr. 111-113).

On June 6, 2016, Dr. Belding completed a checklist physical RFC questionnaire. (Tr. 547-548). Like the State Agency physicians, Dr. Belding indicated that Plaintiff could lift twenty pounds occasionally and ten pounds frequently based on "previous multilevel fusion spine." (Tr. 547). He did not believe Plaintiff's ability to sit or stand were affected by her impairments, yet she needed to alternate between sitting, standing and walking at will. (Tr. 547-548). He opined that Plaintiff could occasionally perform postural activities and occasionally engage in fine and gross manipulation, but neither opinion contained any explanation for the restrictions. *Id*. He observed that Plaintiff had not been prescribed a cane, walker, brace, TENS unit, breathing machine, or oxygen. (Tr. 548). Dr. Belding indicated Plaintiff experienced mild pain that would interfere with concentration and cause absenteeism, but would not take Plaintiff off task. (Tr. 548). Finally, Dr. Belding checked a box indicating Plaintiff would require one hour of additional rest time per day, but provided no explanation. *Id*.

On December 13, 2016, Dr. Orra completed a checklist physical RFC questionnaire. (Tr. 690-691). Dr. Orra indicated that Plaintiff could lift eight pounds occasionally and five pounds frequently based on "scoliosis[,] cervical disc[,] asthma." (Tr. 690). With respect to standing/walking, Dr. Orra opined that Plaintiff could do so for only a total of one-hour in an eight-hour workday in ten-minute increments due to the same diagnoses stated above, but with the addition of "back pain" and "depression." *Id*. With respect to sitting, Dr. Orra indicated that

Plaintiff could sit for six hours in ten hour increments due to scoliosis, back pain, and asthma.[2] *Id*. He further indicated that Plaintiff could rarely climb, balance, and stoop, and never crouch, kneel, or crawl. (Tr. 690). With respect to manipulative restrictions, Dr. Orra indicated Plaintiff could frequently reach, occasionally perform gross manipulation, and rarely push/pull or engage in fine manipulation due to "scoliosis, cervical disc, and carpal tunnel." (Tr. 691). Dr. Orra indicated that environmental restrictions all affect the impairment except for noise. *Id*. He opined that Plaintiff needed to alternate between sitting, standing, and walking at will. *Id*. In contrast to Dr. Belding, Dr. Orra indicated that Plaintiff had been prescribed a cane, TENS unit and breathing machine. *Id*. He characterized Plaintiff's pain as severe, but made no indication that it would interfere with concentration, take Plaintiff off task, or cause absenteeism. *Id*. Finally, Dr. Orra checked a box indicating Plaintiff would require one to two hours of additional rest time per day, but provided no explanation. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage

---

[2] The internal inconsistency is present in the original document. (Tr. 690).

process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.  The claimant has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe: impairments: scoliosis, torn meniscus, mild carpal tunnel syndrome bilaterally (20 CFR 404.1520(c)

and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. The claimant should avoid all exposure to unprotected heights and hazardous machinery. The claimant is limited to occasional push or pulling, occasional overhead reaching, and frequent handling and fine manipulation.

6. The claimant is capable of performing past relevant work as an inspector and hand packager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17-29).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Weight Ascribed to Treating Sources**

In the first assignment of error, Plaintiff asserts that the ALJ erred by violating the treating physician rule with respect to the weight assigned to the opinions of Drs. Belding and Orra. (R. 13, PageID# 765-771). The Commissioner does not challenge that these physicians constitute treating sources. (R. 12). The Commissioner, however, argues that the ALJ satisfied the treating physician rule. *Id*.

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion

10

controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188*, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence."

*Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed the opinions contained in the questionnaire completed by Dr. Belding as follows:

> The claimant's treating orthopedic surgeon, Jonathan E. Belding, M.D., completed a Medical Source Statement: Patient's Physical Capacity (MSS) on June 6, 2016 (Ex. 9F). Dr. Belding opined that the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently and her impairments did not affect standing, walking, and sitting (Ex. 9F/1). The claimant could occasionally climb, balance, stoop, crouch, kneel, and crawl (Ex. 9F/1). She could occasionally reach, push/pull, and perform fine and gross manipulation (Ex. 9F/2). Dr. Belding opined no environmental limitations. He noted no prescribed assistive devices and the claimant would not need to elevate legs at will. He opined that the claimant would need to alternate positions between sitting, standing, and walking at will. He further opined that the claimant experienced mild pain that would interfere with concentration and cause absenteeism. The claimant would also need to take unscheduled breaks and require an hour of additional rest time on an average day.
>
> The undersigned notes that Dr. Belding completed the MSS but did not provide detailed explanation or narrative to support his opinion, particularly regarding his opinion that the claimant required additional breaks. However, the undersigned finds that treatment notes that indicated the claimant was doing well and was pleased with the results, experienced no more arm or neck pain, and only needed to be seen on a two-year basis support his opinion regarding the claimant's ability to perform light exertion and postural functions (Ex. 8F/13-16, 12F/1, 14F/1-2). Further, the undersigned finds Dr. Belding's opinion is consistent with examinations that demonstrated the claimant had full strength in her upper and lower extremities, intact sensations, and normal reflexes (Ex. 8F/13-16, 18, 56, 12F/1, 14F/1-2). Therefore, the undersigned gives partial weight to Dr. Belding's opinion.

(Tr. 26).

Unless a treating source's opinion is given controlling weight, the ALJ is required to

consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

First, it bears noting that the ALJ did not reject Dr. Belding's opinion wholesale, but actually adopted material portions of the opinion into the RFC, most significantly the restriction to light exertional work. (Tr. 21, 547). The ALJ adopted Dr. Belding's opinion that Plaintiff could occasionally perform postural activities.[3] *Id*. Further, the ALJ also adopted Dr. Belding's opinion that Plaintiff was limited to "occasional push or pulling, occasional overhead reaching," but did not adopt the limitations for occasional gross and fine manipulation, opting instead for a less rigorous frequent limitation. (Tr. 21, 548).

Second, as noted above, Dr. Belding's opinion was contained in a checklist questionnaire devoid of any explanation or even a diagnosis. (Tr. 547-548). The ALJ took explicit notice of this lack of explanation, stating that the form completed by Dr. Belding "did not provide detailed explanation or narrative to support his opinion, particularly regarding his opinion that the claimant required additional breaks." (Tr. 26). In other words, the ALJ found there was a lack of supportability. Pursuant to the regulations, "[s]upportability" is one of the factors specifically set

---

[3] The RFC is slightly *more* restrictive than Dr. Belding's opinion in this regard, as it prohibited climbing ladders, ropes, or scaffolds altogether. (Tr. 21).

forth in the regulations used to evaluate opinion evidence, and states that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).[4] Plaintiff attempts to remedy the glaring lack of supportability in the form completed by Dr. Belding by using her Brief on the Merits to point to evidence that ostensibly fills in the gaps in the checklist form completed by Dr. Belding. The ALJ's review of a medical source's opinion, however, is properly based on the opinion itself and not Plaintiff's *post hoc* rationale.

In addition, the ALJ points to a perceived inconsistency between Dr. Belding's opinion and the treatment notes that contained claimant's own statements that she was doing well and was experiencing no more arm or neck pain, as well as Dr. Belding's opinion that she needed to

---

[4] Given the complete lack of any meaningful explanation in the questionnaire by Dr. Belding, the opinion is arguably patently deficient and not subject to the rigors of the treating physician rule, especially as it relates to those opinions not adopted by the ALJ. Though not argued by the Commissioner, the Sixth Circuit and numerous district courts have found that failure to give good reasons for rejecting a check-box/checklist opinion, which is unaccompanied by any explanation, is harmless error. *Hernandez v. Commissioner*, 644 Fed. App'x 468, 474 (6th Cir. Mar. 17, 2016) (finding that such evidence was "'weak evidence' at best' and meets our patently deficient standard") (citations omitted); *accord Shepard v. Commissioner*, 705 Fed. App'x 435 (6th Cir. Sept. 26, 2017); *Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) ("even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis ); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) (magistrate judge "correctly found that any error in the ALJ's consideration of Lewis' evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it"). Because the court recommends finding that the ALJ gave sufficiently good reasons for not adopting Dr. Belding's opinion, it has declined to offer an opinion as to whether the checklist opinion is so patently deficient that a violation of the treating physician rule would be deemed harmless error. Nevertheless, such a finding would be consistent with circuit law.

be seen only on a two-year basis.[5] (Tr. 26). When considering the factors set forth in the regulations, the ALJ's decision clearly addressed the supportability of the Dr. Belding's opinion and its consistency with the record as it related to light exertional restrictions, but inconsistency as to other limitations (*i.e.* additional breaks). The ALJ's discussion concerning the supportability and consistency factors satisfied the treating physician rule. *See generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016). The decision renders it apparent that the ALJ considered the proper factors in determining how much weight to ascribe to Dr. Belding's opinion even if decision does not explicitly discuss each factor. *See Francis*, 2011 WL 915719, at *3 (the regulations require only consideration of the factors, and does not require an the ALJ to articulate "an exhaustive factor-by-factor analysis"); *Gayheart*, 710 F.3d at 376.

Turning to the opinion of Dr. Orra, the ALJ addressed it as follows:

> The undersigned also considered and evaluated the opinion of the claimant's primary care provider, Abdul M. Orra, D.O., who completed a Medical Source Statement: Patient's Physical Capacity (MSS) on December 13, 2016 (Ex. BF).

---

[5] Plaintiff's contention— that the ALJ was improperly cherry-picking by not mentioning that the same treatment note indicated the persistence of back pain—is not well taken. (R. 11, PageID# 767-768). The Sixth Circuit has found that a claimant's allegation of cherry-picking evidence by the ALJ unavailing on appeal, agreeing with the court below that such an "allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017). Dr. Belding described Plaintiff's pain as "mild" in his checklist opinion, and he does not explain how mild pain would interfere with concentration, cause absenteeism, or require additional rest breaks. (Tr. 548).

15

Dr. Orra opined that the claimant could lift/carry eight pounds occasionally and five pounds frequently, stand or walk for one hour in an eight-hour workday and 10 minutes without interruption, and sit for six hours in an eight-hour workday and one hour without interruption (Ex. 13F/1). The claimant could rarely climb, balance, stoop, and stop and never crouch, kneel, and crawl (Ex. 13F/1). She could frequently reach, rarely push/pull and perform fine manipulation, and occasionally perform gross manipulation (Ex. 13F/2). Dr. Orra opined environmental limitations with heights, moving machinery, temperature extremes, and pulmonary irritants. He noted the claimant has a prescribed cane, TENS unit, and breathing machine. He opined that the claimant would not need to elevate legs at will but would need to alternate positions between sitting, standing, and walking at will. He also noted severe pain. The claimant would also need to take unscheduled breaks and require one to two hours of additional rest time on an average day.

The undersigned notes Dr. Orra's findings regarding the claimant's conditions, specifically, her back impairments, but that he did not provide any explanation or narrative to support his limitations. Further, the undersigned finds that Dr. Orra's opinion is inconsistent with the limitations set forth by the claimant's orthopedic surgeon, Dr. Belding, who opined light exertion and occasional postural functions and noted mild rather than severe pain (Ex. BF). The undersigned also finds that Dr. Orra's opinion is inconsistent with his own treatment notes that indicated [sic]. In addition, the undersigned finds that Dr. Orra's opinion is inconsistent with his treatment notes that referenced the claimant's ability to engage in activities, such as vacuuming and mopping, driving, cooking, swimming, and traveling out of state to places, such as Florida, Boston, and Las Vegas (Ex. 3F/3, 4F/4-5, 5F/ 11, 13, 10F/33, 100, 11F/13-14). Therefore, the undersigned gives partial weight to Dr. Orra's opinion.

(Tr. 27).

As with Dr. Belding's opinion, the ALJ noted the lack of supportability by expressly citing the absence of an explanation or narrative to support the restrictions assessed by Dr. Orra.[6] (Tr. 27). Moreover, Dr. Belding's opinion and Dr. Orra's opinion are clearly at odds in many respects. (Tr. 547-548, 690-691). The ALJ unequivocally credited the exertional and postural limitations assessed by Dr. Belding over those assessed by Dr. Orra. (Tr. 27). The ALJ explained

---

[6] As with Dr. Belding's opinion, the lack of any meaningful explanation for the limitations assessed arguable renders the checklist opinion patently deficient under *Hernandez*.

she was adopting the exertional and postural limitations in Dr. Belding's opinion, finding they were "consistent with examinations that demonstrated the claimant had full strength in her upper and lower extremities, intact sensations, and normal reflexes" while also stating that Dr. Orra's opinion was inconsistent with the claimant's activities. (Tr. 26-27). Dr. Belding's opinion in this regard also had the support of consistent opinions from the State Agency physicians, whose opinions the ALJ assigned considerable weight. Thus, the ALJ gave sufficiently good reasons for rejecting the more restrictive limitations assessed by Dr. Orra. An ALJ cannot reasonably be expected to give great weight to two separate treating physician opinions on the same issue where those opinions diverge.

To the extent Plaintiff invites the court to construe the unexplained opinion of Dr. Belding with respect to the need for additional breaks and the unexplained opinions of Dr. Orra as consistent with the medical records, such an invitation must be rejected as courts "may not reweigh conflicting evidence on appeal, but instead must affirm" if a decision is supported by substantial evidence. *Haun v. Comm'r of Soc. Sec.*, 107 Fed. App'x 462, 465 (6th Cir. 2004); *see also Steed v. Colvi*n, 2016 U.S. Dist. LEXIS 114027 (N. D. Ohio, Aug. 25, 2016) (McHargh, M.J.) ("While [the plaintiff] may disagree with the ALJ's explanation or her interpretation of the evidence of record, her disagreement with the ALJ's rationale does not provide a basis for remand."); *Kiser v. Colvin*, No. CV 14-170, 2016 WL 527942, at *3 (E.D. Ky. Feb. 8, 2016) ("To the extent that Plaintiff suggests that … evidence is open to another interpretation that favors his claim, the Court declines to reweigh the evidence in this fashion."); *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-CV-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."), *report and recommendation adopted*, No. 2:15-CV-3015, 2017 WL

1034583 (S.D. Ohio Mar. 16, 2017).

Finally, Plaintiff takes issue with the ALJ assigning greater weight to the opinions of the State Agency physicians, Drs. Thomas and Torello than to the treating source opinions. (R. 11, PageID# 771-772). Plaintiff also takes issue with the fact that the State Agency physicians' opinions were rendered over eighteen months prior to the hearing and do not take into account additional treatment or the later opinions of the treating sources.[7] *Id*. It is true that the ALJ assigned "considerable weight to these opinions," while assigning only "partial weight" to the opinions of Drs. Belding and Orra. (Tr. 25-27). Plaintiff, however, cites no authority for the proposition that either of these facts constitute grounds for remand. Although the treating sources' opinions were more recent than the State Agency physicians' opinions, the ALJ's explanation for discounting the treating source opinions, as discussed above, was sufficient. Furthermore, it is the responsibility of the ALJ to resolve the conflicts in the record where there are conflicting opinions resulting from essentially the same medical data. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC). "It is the duty of the ALJ, as the trier of fact, to resolve conflicts in the medical evidence." *Hensley v. Astrue*, No. 12-106, 2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) *citing Richardson v. Perales*, 402 U.S. 389,

---

[7] "There is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11cv828, 2013 WL 121813 at *6 (S.D. Ohio Jan. 9, 2013), *report and recommendation adopted*, 2013 WL 1090303 (S.D. Ohio Mar. 15, 2013).

399 (1971)). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations omitted).

There is no indication that the ALJ discredited either treating source opinion in favor of the State Agency consulting physicians *because* it was inconsistent with the State agency opinions.[8] (Tr. 21). The ALJ's decision is devoid of any statement suggesting that the ALJ discounted Dr. Belding's or Dr. Orra's opinions because they conflicted with the opinions of non-treating sources. Thus, Plaintiff fails to establish a basis for remand simply by taking issue with the ALJ's reliance on less recent, non-treating opinions.

**2. RFC Finding**

In the second assignment of error, Plaintiff asserts the RFC is not supported by substantial evidence. (R. 11, PageID# 772-774).

The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[9] The ALJ bears the responsibility for assessing a claimant's RFC,

---

[8] Where the reason given for rejecting a treating source's opinion is simply that it conflicts with a non-treating source's opinion, the treating physician rule has been violated. *See, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that an ALJ may not base the rejection of a treating source's opinion upon its inconsistency with the opinions of non-examining State agency consultants, as that would turn the treating physician rule on its head); *see also Brewer v. Astrue*, No. 1:10-CV-01224, 2011 WL 2461341, at *7 (N.D. Ohio June 17, 2011) (White, M.J.). Here, the ALJ gave other "good reasons" for discounting the treating physicians' opinions independent of any State agency physician's conflicting opinions.

[9] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion.'" *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question— may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010) (same).

Plaintiff's RFC argument is largely redundant of her above argument that the ALJ should have accepted treating source opinions that she required additional rest breaks and the more

restrictive physical exertions opined by Dr. Orra. (R. 11, PageID# 772-774). To the extent Plaintiff's second assignment of error merely repeats her prior argument that the ALJ should have ascribed greater weight to treating source opinions, the court's above determination that the ALJ gave sufficiently good reasons for rejecting such opinions renders the argument moot.

Further, the RFC is supported by state agency physicians Dr. Thomas and Dr. Torello, and even partially by Dr. Belding. The ALJ explicitly ascribed considerable weight to the State Agency opinions. (Tr. 25). State Agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the State Agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that State Agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the State Agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (State Agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.")

Although Plaintiff clearly believes more restrictive limitations could have been assessed based on the medical record, that belief does not establish a violation of the substantial evidence standard. The court finds no merit to Plaintiff's assignment of error.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: December 21, 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).